# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| OCTAVIA MERTENS, ANGELICA HERRERA, BELEN CADENA, and KELLY SANCHEZ, <br> *Plaintiffs* <br><br> v. <br><br> BENELUX CORPORATION d/b/a PALAZIO MEN'S CLUB, ANTHANASES STAMATOPOULOS, and MICHAEL MEALEY, <br> *Defendants* | Case No. 1:24-CV-00276-RP |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants' Partially Opposed Motion to Compel Arbitration and Dismiss under Rule 12(b)(3), filed April 30, 2024 (Dkt. 6); Plaintiffs' Response, filed May 21, 2024 (Dkt. 9); and Defendants' Reply, filed May 28, 2024 (Dkt. 10).[1]

### I.   Background

Plaintiffs Octavia Mertens, Angelica Herrera, Belen Cadena, and Kelly Sanchez bring this class action suit under the Fair Labor Standards Act ("FLSA") against their employer, Benelux Corporation d/b/a Palazio Men's Club; Palazio's owner, Anthanases Stamatopoulos; and Palazio's General Manager, Michael Mealey. In their First Amended Complaint, Plaintiffs assert claims for minimum wage violations and misappropriation of tips under the FLSA and for fraudulent filing

---

[1] By Text Order issued May 29, 2024, the District Court referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

1

of tax returns under 26 U.S.C. § 7434(a). Dkt. 16. They also seek an order designating Plaintiffs as class representatives of other similarly situated wait staff at Palazio under Rule 23.

Plaintiffs allege that they are employed as wait staff at Palazio, a strip club in Austin, Texas. Dkt. 16 at 1. Their job duties include selling "VIP cabanas"[2] to customers, taking drink orders, encouraging customers to buy dances, and handling credit card transactions. *Id.* ¶¶ 34, 36. Plaintiffs earn an hourly wage of $2.13 and receive tips from customers. They allege that Defendants have required Plaintiffs and other wait staff to share their tips with managers for years, but in the months before Plaintiffs filed their Complaint, "Defendants have permitted the managers to take the vast majority of tips earned by Plaintiffs and all other wait staff." *Id.* at 1. Plaintiffs also allege that Defendants illegally deducted various costs from their pay and did not track the tip-out payments they are required to make to managers, bartenders, and bar staff at the end of each shift. Plaintiffs allege that, "as a result, Plaintiffs were taxed on income they did not actually receive." *Id.* ¶ 46. Plaintiffs also allege that Defendants failed to maintain accurate records of their hours of work and compensation, as required by the FLSA, and that Defendants promulgated false W-2 and 1099 tax forms overreporting Plaintiffs' income to the IRS.

In their Motion to Compel Arbitration and Dismiss Under Rule 12(b)(3), Defendants argue that Plaintiffs must be compelled to arbitration under agreements executed when they were hired in February and March 2020. Plaintiffs Mertens, Herrera, and Sanchez do not oppose submitting their claims to arbitration. But Plaintiff Cadena opposes arbitration because Defendants did not sign and execute her arbitration agreement.

---

[2] "VIP cabanas" are private rooms that customers can pay to reserve for a period of time.

## II.     Legal Standards

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a party to an arbitration agreement to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. The FAA "does not require parties to arbitrate when they have not agreed to do so," but "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

To determine whether a party is entitled to enforce an arbitration agreement, courts follow a two-step inquiry, determining whether (1) there is a valid agreement to arbitrate, and (2) the dispute falls within the scope of that agreement. *Kubala v. Supreme Prod. Svcs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Because Cadena does not dispute that the claims Plaintiffs assert in the First Amended Complaint fall within the scope of the arbitration agreement, the Court's inquiry is limited to the first question.

The party seeking to compel arbitration has the burden to show that a valid arbitration agreement exists. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019). Whether a valid agreement to arbitrate exists is governed by ordinary state-law contract principles. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). "Because arbitration is simply a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate." *Id.* (cleaned up). If there is no arbitration agreement between the parties, the court must deny the motion to compel arbitration with prejudice. *Halliburton*, 921 F.3d at 531-32.

3

### III.   Analysis

Defendants argue that Cadena must be compelled to arbitration because she signed an arbitration agreement on February 27, 2020, which requires her to arbitrate all non-administrative claims arising out of her employment. Dkt. 6-2 ("Arbitration Agreement"). Plaintiffs argue that Cadena cannot be compelled to arbitration because Defendants did not sign and execute the Arbitration Agreement, so there is no arbitration agreement to enforce. Defendants contend that they did not need to countersign Cadena's Arbitration Agreement to make it enforceable.

As stated, the Court looks to state law to determine whether the Arbitration Agreement is enforceable. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) ("Determining whether there is a valid arbitration agreement is a question of state contract law and is for the Court."). The parties agree that Texas law applies.

> Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists. Instead, the party moving to compel arbitration must show that the agreement meets all the requisite contract elements. In addition, because the validity of the agreement is a matter of contract, at this stage, the strong federal policy favoring arbitration does not apply.

*Id.* at 688-89 (citations omitted).

Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Id.* at 689. The parties dispute the last element.

The question whether a written contract must be signed to be binding "is a question of the parties' intent." *Id.* Generally, signatures are not required "as long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract." *Id.* (citation omitted). The party

4

attempting to enforce an unsigned agreement has the burden to show that the parties intended to be bound whether or not the contract was signed by both parties. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 210 (Tex. App.—El Paso 2004, mand. denied).

A court can decide intent as a matter of law. *Huckaba*, 892 F.3d at 689. "In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). In identifying such intent, courts "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.*

In *Huckaba*, the Fifth Circuit addressed whether an arbitration agreement between an employee and her employer was enforceable under Texas law where, as here, only the employee signed the agreement. 892 F.3d at 688. The court found that the express language of the arbitration agreement clearly indicated that the parties intended to be bound by the agreement only if both parties signed it. *Id.* at 689. While the Court acknowledged that "a signature block by itself is insufficient to establish the parties' intent to require signatures," it found there was "more than a blank signature block that speaks to the parties' intent." *Id.* at 689-90. The agreement also contained language that the parties needed to sign the agreement to give it effect. *Id.* at 690. It (1) identified the parties in the first line as "Employer" and "Employee" and stated that they were agreeing all claims and disputes arising out of plaintiff's employment; (2) stated that "by signing this agreement the parties are giving up any right they may have to sue each other;" and (3) stated that modifications would be allowed only if "in writing and signed by all parties." *Id.* at 689. The court found that "this express language clearly indicates an intent for the parties to be bound to the arbitration agreement by signing." *Id.*

5

The court concluded that the question of the employer's intention was "answered by the agreement it drafted." *Id.* Because the agreement contained language that the parties needed to sign the agreement to give it effect, the Fifth Circuit gave "meaning to the words Ref-Chem used in its agreement. And because Ref-Chem did not sign the agreement, neither party [was] bound." *Id.* at 691; *see also Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996) ("If parties negotiating a contract intend that the contract shall be reduced to writing and signed by the parties . . . then either party may withdraw at any time before the written agreement is drawn up and signed by both parties."); *Graham v. Leisure Pools USA Trading, Inc.*, No. 1:23-CV-734-RP, 2024 WL 1473743, at *5 (W.D. Tex. Feb. 26, 2024) (relying on *Huckaba* to find that arbitration agreement signed only by employee was not enforceable), *R. & R. adopted*, 2024 WL 1471547 (W.D. Tex. Apr. 3, 2024).

### A. Arbitration Agreement

The first two sentences of the Arbitration Agreement state: "This Arbitration Agreement . . . is entered into by and between the '**Club**' and '**Employee**' (the '**Parties**,' with each being a '**Party**') to promote alternative dispute resolution of any and all disputes between the **Parties**. The '**Club**' and '**Employee**' are identified on the signature page of this **Agreement**." Dkt. 6-2 at 1. The Agreement discusses the arbitration process and waiver of rights to litigate in a court of law, and states that all non-administrative claims must be resolved in arbitration in accordance with the FAA. The final page of the agreement states:

> BY SIGNING THIS ARBITRATION AGREEMENT, EMPLOYEE AND THE CLUB'S REPRESENTATIVE REPRESENT THAT:
> - THEY HAVE FULLY READ THIS AGREEMENT PRIOR TO SIGNING IT;
> - THEY HAVE BEEN PROVIDED A COPY OF THIS AGREEMENT AND HAVE HAD OPPORTUNITIES TO BOTH ASK QUESTIONS REGARDING ITS CONTENT

> AND HAVE IT REVIDWED BY PERSONS OF THEIR CHOICE, INCLUDING BY ATTORNEYS AND ACCOUNTANTS, BEFORE THEY HAVE SIGNED IT; AND
>
> - THEY UNDERSTAND THE TERMS OF THIS AGREMENT AND AGREE TO BE BOUND BY THEM.

*Id.* at 5. Two signature blocks – one for the "**CLUB**" and one for the "**EMPLOYEE**" – follow this language. *Id.* Cadena signed her name in both places on February 27, 2020. *Id.* Palazio did not sign under "**CLUB**" block or anywhere else in the Arbitration Agreement. *Id.*

### B. Intent

Plaintiffs argue that Cadena did not intend to be bound by the Arbitration Agreement until Palazio also signed and agreed in writing to be bound by its terms. Cadena Dec., Dkt. 9-3 ¶¶ 3-6. Plaintiffs argue: "The express language of the Arbitration Agreement indicates an intention for Defendants to be bound by their signature just like in *Huckaba* and *Graham*." Dkt. 9 at 5. They emphasize that Defendants drafted the agreement "to include the sentence requiring signature by both parties to be bound by the terms and included a signature block for "Club . . . Benelux Corporation d/b/a The Palazio." *Id.* Plaintiffs also point out that Defendant Michael Mealey, Palazio's General Manager, describes in his declaration how Palazio's "typical practice is to countersign Arbitration Agreements on behalf of the Club," and that he countersigned the Arbitration Agreements for all other Plaintiffs. Dkt. 6-1, ¶ 6.

Defendants state that the "the lack of a signature on behalf of the Club was an unintentional mistake" by Mealey because he was "hurriedly reviewing numerous Arbitration Agreements signed by personnel that day." Mealey Decl., Dkt. 6-1 ¶ 10. They argue that a blank signature block alone does not establish that the Club's signature was required as a condition precedent to the Arbitration Agreement becoming effective as a contract, arguing that it "does not clearly and explicitly require signatures." *Id.* at 8.

7

The Court disagrees and finds that here, as in *Huckaba*, there is "more than a blank signature block that speaks to the parties' intent." 892 F.3d at 690. The Arbitration Agreement contains clear and express language that the parties must sign the agreement to give it effect. *See* Dkt. 6-2 at 5 ("BY SIGNING THIS ARBITRATION AGREEMENT . . . THEY UNDERSTAND THE TERMS OF THIS AGRMENT AND AGREE TO BE BOUND BY THEM."). The question of Defendants' intent is answered by the agreement they drafted. *Huckaba*, 892 F.3d at 690.

Defendants also rely on several extra-contractual factors related to the parties' conduct to support their argument that the parties intended to be bound by the agreement without both signatures. Defendants point out that (1) Cadena signed the agreement and accepted its terms; (2) Cadena continued to work at Palazio for several years after signing the agreement; and (3) Defendants prepared the Arbitration Agreement, presented it to Cadena for her signature, accepted a signed copy, kept it in their records, and now seek to enforce it. Dkt. 6 at 11. In *Huckaba*, the Fifth Circuit founds these same arguments irrelevant to an intent to be bound under Texas law. 892 F.3d at 690-91. As in *Huckaba*, the Court gives meaning to the words Defendants used in their Arbitration Agreement. Because Defendants never signed the Arbitration Agreement, it was never executed and is not enforceable. *Id.*; *Graham*, 2024 WL 1473743, at *5.

The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Defendants have not shown that there was a valid and enforceable arbitration agreement between them and Cadena.[3]

---

[3] Defendants' request to dismiss the case is inappropriate in light of the Supreme Court's recent opinion that the FAA requires a court to stay, rather than dismiss, a lawsuit involving an arbitrable dispute. The Court reasoned that "staying rather than dismissing a suit [subject to arbitration] comports with the supervisory role that the FAA envisions for the courts," given that the "FAA provides mechanisms for courts with proper jurisdiction to assist parties in arbitration." *Smith v. Spizzirri*, 601 U.S. 478 (2024).

## IV. Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **DENY** Defendants' Partially Opposed Motion to Compel Arbitration and Dismiss Under Rule 12(b)(3) (Dkt. 6).

**IT IS FURTHER ORDERED** that the Clerk remove this case from this Magistrate Judge's docket and return it to the docket of the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on September 30, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE