**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MAGGIE MONTES and** | § | |
| **BREONA HORNE on Behalf of** | § | |
| **Themselves and Others Similarly Situated,** | § | |
| | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 1:24-cv-276-RP** |
| | § | |
| **V.** | § | |
| | § | |
| **BENELUX CORPORATION d/b/a** | § | **JURY TRIAL DEMANDED** |
| **PALAZIO MEN'S CLUB, ANTHANASES** | § | |
| **STAMATOPOULOUS, and MICHAEL** | § | |
| **MEALEY** | § | |
| **Defendants.** | § | |
| | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

This is an action for unpaid minimum wages, misappropriated tips, and damages for tax fraud, brought on behalf of a group of wait staff that worked at Defendants' strip club, Palazio, in Austin, Texas. Plaintiffs Octavia Mertens, Angelica Herrera, Belen Cadena, Kelly Sanchez, Maggie Montes, and Breona Horne bring this action on behalf of themselves and all others similarly situated, as an opt-in collective action under the Fair Labor Standards Act ("FLSA") and as an opt-out class action under 26 U.S.C. § 7434 and Federal Rule of Civil Procedure 23. For years, Defendants have required Plaintiffs and other wait staff to share their tips with managers, which is always a violation of the FLSA. Over the past several months, however, Defendants have permitted managers to take the vast majority of tips earned by Plaintiffs and all other wait staff.

Beyond this unlawful tip theft, Defendants made fraudulent reports to the IRS that Plaintiffs did in fact kept all of their tips, when they did not, which caused Plaintiffs to pay substantially more in taxes than they should have.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' claims pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

2. This Court has personal jurisdiction over Defendants because each Defendant has sufficient contacts with this forum to give the Court general jurisdiction over each Defendant.

3. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b)(1) and (2) because a substantial portion of the events forming the basis of this suit occurred in this District.

4. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

5. Plaintiff Octavia Mertens is an individual residing in Travis County, Texas. Plaintiff Mertens has consented to the filing of this action for violations of the FLSA.

6. Plaintiff Angelica Herrera is an individual residing in Hays County, Texas. Plaintiff Herrera has consented to the filing of this action for violations of the FLSA.

7. Plaintiff Belen Cadena is an individual residing in Travis County, Texas. Plaintiff Cadena has consented to the filing of this action for violations of the FLSA.

8. Plaintiff Kelly Sanchez is an individual residing in Hays County, Texas. Plaintiff Sanchez has consented to the filing of this action for violations of the FLSA.

9. Plaintiff Maggie Montes is an individual residing in Travis County, Texas. Plaintiff Sanchez has consented to the filing of this action for violations of the FLSA, see Exhibit 1.

*Plaintiffs' Second Amended Complaint*                                                                2

10. Plaintiff Breona Horne is an individual residing in Williamson County, Texas. Plaintiff Sanchez has consented to the filing of this action for violations of the FLSA, see Exhibit 2.

11. Defendant Benelux Corporation d/b/a Palazio Men's Club ("Defendant Benelux" or "Palazio") is a domestic corporation with its principal place of business at 501 E. Ben White Blvd, Austin, Texas 78733. Defendant Benelux may be served with process by serving its registered agent, Anthanases Stamatopoulos at 604 Barrett Lane, Austin, Texas 78733.

12. Defendant Anthanases Stamatopoulos is an individual residing in or around Austin, Texas who may be served at his principal place of business at 501 E. Ben White Blvd, Austin, Texas 78704.

13. Defendant Michael Mealey is an individual residing in or around Kyle, Texas who may be served at his principal place of business at 501 E. Ben White Blvd, Austin, Texas 78704.

## FACTS

14. Defendants operate a strip club known as Palazio Men's Club located at 501 E. Ben White Blvd, Austin, Texas 78704.

15. Defendants employed Plaintiff Mertens as a waitress from approximately April 2019 until approximately February 2024.

16. Defendants employed Plaintiff Herrera as a waitress from approximately February 2016 to approximately February 2024.

17. Defendants have employed Plaintiff Cadena as a waitress since approximately August 2017.

18. Defendants employed Plaintiff Sanchez as a waitress from approximately late September 2017 until approximately October 2023.

*Plaintiffs' Second Amended Complaint*                                                    3

19. Defendants employed Plaintiff Montes from approximately April 2017 to approximately February 2022. Plaintiff Montes never signed Defendants' arbitration agreement when it was proposed in February 2020, and Defendants permitted Plaintiff Montes to continue working despite not signing the arbitration agreement.

20. Defendants employed Plaintiff Horne from approximately February 2017 to approximately February 2024. Plaintiff Horne never signed Defendants' arbitration agreement when it was proposed in February 2020, and Defendants permitted Plaintiff Horne to continue working despite not signing the arbitration agreement.

21. The job duties and job description of the wait staff at Palazio was and is essentially the same.

22. Defendant Stamatopoulos is the sole owner, director, and president of Palazio.

23. At all times relevant to this action, Defendant Stamatopoulos had operational control over Palazio, exercised control over the terms and conditions of employees' work, and had the power to act on behalf of Palazio vis-à-vis its employees, including Plaintiffs.

24. Defendant Stamatopoulos had the power and exercised the power to establish the wages and working conditions of Palazio's employees, including Plaintiffs, had the power to hire and fire employees, and had control over the maintenance of employee records.

25. Defendant Mealey has been the General Manager of Palazio since 2017.

26. At all times relevant to this action, Defendant Mealey supervised and controlled Palazio's employees' work schedules, had and exercised the power to hire and fire, and had control over the maintenance of employee records.

*Plaintiffs' Second Amended Complaint*                                        4

27. Upon information and belief, Defendant Stamatopoulos and Defendant Mealey together had and exercised the power to set the rate and method of payment of Defendants' employees, including by developing the scheme to underpay Plaintiffs.

28. At all times relevant to this action, Defendants controlled and supervised the work performed by Plaintiffs.

29. At all times mentioned herein, Defendants were "employers" or "joint employers" within the meaning of the FLSA.

30. At all times relevant to this action, Defendants paid Plaintiffs an hourly wage of $2.13.

31. In addition to the hourly wage, Plaintiffs received tips from Defendants' customers.

32. At all times relevant to this action, Defendants required Plaintiffs to share their tips with Defendants' managers.

33. If Defendants' managers did not feel that Plaintiffs tipped them enough, then the managers would retaliate against Plaintiffs by assigning them less desirable tables.

34. A substantial source of Plaintiffs' tips came from selling VIP cabanas to customers. The VIP cabana is a private room that customers can pay to reserve for a period of time.

35. For a separate fee, customers in VIP cabanas can directly pay a dancer or dancers to join them in the cabana for agreed-upon periods of time. After VIP customers agreed upon a price for a dancer, Plaintiffs facilitated the transaction in the presence of a manager. Customers generally used their credit card for this transaction, and generally added a tip before signing and handing the receipt over to Plaintiffs.

36. While customers were in the VIP cabana, Plaintiffs were responsible for taking customers' drink orders, encouraging customers to purchase dances, handling issues related to customers' banks declining card credit transactions, and notifying the customer and dancer when their paid

*Plaintiffs' Second Amended Complaint*                                                                 5

time for the VIP cabana expired.

37. Up until January 2024, Plaintiffs were required to share a percentage of their total tips with managers at the end of each night.

38. Beginning in January 2024, Defendants began permitting managers to take the vast majority of tips generated by customers Plaintiffs serviced in the VIP cabanas.

39. Beginning in January 2024, Defendants' managers would handle the credit card transaction with customers seeking a VIP cabana outside the presence of Plaintiffs.

40. Plaintiffs would then service the VIP cabanas as normal, and close out the credit card transaction with customers once their time had elapsed.

41. In further violation of Plaintiffs' minimum wage rights, Defendants made illegal deductions from their pay for various costs for the benefit of their employer.

42. These deductions included meals and beverages that Defendants charged to Plaintiffs during their shifts.

43. Further, Defendants required Plaintiffs to pay for their uniforms, including special event costumes and corsets.

44. Defendants did not track the tip-out payments they required Plaintiffs to make to managers, bartenders, and bar staff at the end of each shift.

45. The paystubs Defendants gave Plaintiffs included the amounts they earned before they made the mandatory tip-out payments to managers and other staff at the end of each shift.

46. As a result, Plaintiffs were taxed on income they did not actually receive.

47. In keeping with their false paystubs, Defendants promulgated false Forms W-2 and 1099 to Plaintiffs, which overreported Plaintiffs' income and tax liability to the IRS.

48. Moreover, Plaintiffs worked off-the-clock for Defendants for time at the beginning of their

*Plaintiffs' Second Amended Complaint*                                          6

shifts, during mandatory training meetings, and when Defendant required Plaintiffs to contact their regular customers before coming in for their shift.

49. At all times relevant to this action, Defendants failed to maintain complete and accurate records of the Plaintiffs' hours of work and compensation, as required by the FLSA.

50. At all times relevant to this action, Defendants knowingly, willfully, or with reckless disregard, carried out their illegal pattern or practice of failing to pay Plaintiffs their minimum wages and earned tips.

FLSA COVERAGE ALLEGATIONS

51. At all relevant times, Defendants have been an "employer" within the meaning of Section 3(d) of the FLSA.

52. At all relevant times, Plaintiffs were "employees" (as defined in Section 3(e)(1) of the FLSA) whom Defendants at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA.

53. At all relevant times, Defendants have been engaged in an "enterprise" within the meaning of Section 3(r) of the FLSA.

54. At all relevant times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA, in that it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done in excess of $500,000, exclusive of excise taxes at the retail level which are separately stated.

55. In performing their work as wait staff, Plaintiffs handled goods and equipment imported

*Plaintiffs' Second Amended Complaint*                                          7

from other countries and states, including glassware, alcohol, and food products.

56. At all relevant times, Plaintiffs were engaged in commerce or were employed in an enterprise engaged in commerce within the meaning of the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

57. Under 29 U.S.C. § 216(b), Plaintiffs seek authorization to send notice of the right to join this lawsuit to a group of similarly situated employees ("Potential Opt-In Plaintiffs"), delineated as follows:

> **All current and former wait staff employed by Defendants at any time three years prior to the filing of this lawsuit to the present.**

58.  Plaintiffs and the Potential Opt-In Plaintiffs performed the same or similar job duties as one another in that they worked as wait staff in Defendants' strip club.

59. Further, Plaintiffs and the Potential Opt-In Plaintiffs were denied minimum wages and had their tips misappropriated under the same policies and practices described above. Application of those policies and practices does not depend on the personal circumstances of the Plaintiffs or those joining this lawsuit. Thus, Potential Opt-In Plaintiffs are owed unpaid minimum wages and misappropriated tips for the same reasons as Plaintiffs, without regard to their individualized circumstances.

## RULE 23 CLASS ACTION ALLEGATIONS

60. Plaintiffs, individually and on behalf of all other similarly situated employees, pursue their tax fraud claims against Defendant Benelux on a class basis under Rule 23 of the Federal Rules of Civil Procedure.

61. Plaintiffs seek certification of a class under Rule 23 of the Federal Rules of Civil Procedure ("Putative Class Members") as follows:

*Plaintiffs' Second Amended Complaint*                                                                        8

**All current and former wait staff employed by Defendant Benelux at any time six years prior to the filing of this lawsuit to the present.**

62. Plaintiffs, individually and on behalf of all other similarly situated employees, seek relief on a class basis for Defendant's policies and practices of over-reporting their tips earned to the IRS.

63. Defendant maintained and continues to maintain common tax reporting and pay policies that applied equally to all wait staff. As a result, Plaintiffs and Putative Class Members are similarly situated and have been regularly overpaying on their actual tax liabilities to the IRS because of Defendant's fraudulent reporting practices.

64. Plaintiffs' tax fraud claims against Defendant Benelux satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements for certification of a class action under Federal Rule of Civil Procedure 23.

65. **Numerosity.** The class satisfies the numerosity standard because, upon information and belief, there are at least 50 Putative Class Members. Consequently, joinder of all Putative Class Members in a single action is impracticable. The data required to calculate the size of the class is within the sole control of Defendants.

66. **Commonality.** There are questions of law and fact common to the class that predominate over any questions affecting individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

    a. Whether Defendant Benelux violated 26 U.S.C. § 7343 by overreporting Plaintiffs' and Putative Class Members' tipped income to the IRS; and

    b. The proper measure of damages sustained by Plaintiffs and Putative Class Members.

67. **Typicality.** Plaintiffs' claims are typical of those of the Putative Class Members because the Plaintiffs' claims arise from the same course of conduct and legal theories as the claims of the Putative Class Members. Like Putative Class Members, Plaintiffs had their tipped income over-reported to the IRS by Defendant Benelux. Like Putative Class Members, Plaintiffs overpaid on their actual tax liabilities to the IRS because of Defendant's fraudulent reporting practices. The other facts outlined above likewise apply equally to both Plaintiffs and Putative Class Members.

68. **Adequacy.** Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the Putative Class Members they seek to represent. The interests of the members of the class will be fairly and adequately protected by Plaintiffs and the undersigned counsel, who have experience in employment and class action lawsuits.

69. **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any number of the class could afford to pursue individual litigation against Defendant Benelux, doing so would unduly burden the court system. Individual litigation of fifty claims or more would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the class would create risk of inconsistent and varying judicial results and establish incompatible standards of conduct for Defendant. A single class action can determine the rights of Plaintiffs and Putative Class Members in conformity with the interest of efficiency and judicial economy.

### FIRST CAUSE OF ACTION (FLSA Minimum Wage)

70. The above-described actions by all Defendants violated Plaintiffs' and Potential Opt-In Plaintiffs' right to receive a minimum wage under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, for which Plaintiffs and Potential Opt-In Plaintiffs are entitled to relief pursuant to 29

*Plaintiffs' Second Amended Complaint*                                                                                       10

U.S.C. § 216(b).

## SECOND CAUSE OF ACTION (FLSA Misappropriation of Tips)

71. The above-described actions by all Defendants violated Plaintiffs' and Potential Opt-In Plaintiffs' right to receive all tips they earned under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, for which Plaintiffs and Potential Opt-In Plaintiffs are entitled to relief pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION (Fraudulent Filing of Tax Returns)

72. The above-described actions by Defendant Benelux constitute fraudulent filing of Plaintiffs' and Putative Class Members' income tax returns, in violation of 26 U.S.C. § 7434(a), for which Plaintiffs and Putative Class Members are entitled to relief pursuant to 26 U.S.C. § 7434(b).

## FOURTH CAUSE OF ACTION (Breach of Contract and Quasi-Contract)

73. The Plaintiffs and Putative Class Members are entitled to recover damages for Defendants' failure to pay their off-the-clock work under the Texas common law for breach of contract, quantum meruit, promissory estoppel, unjust enrichment, or money had an received.

## JURY DEMAND

74.     Plaintiffs, Potential Opt-In Plaintiffs, and Putative Class Members request a trial by jury.

## PRAYER

For the foregoing reasons, Plaintiffs pray for the following relief:

a.      For an expedited order authorizing notice to Potential Opt-In Plaintiffs under the FLSA, 29 U.S.C. § 216(b);

b.      For an Order under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), finding

*Plaintiffs' Second Amended Complaint*                                                11

Defendants liable for unpaid back wages due to Plaintiffs and Potential Opt-In Plaintiffs and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs and Potential Opt-In Plaintiffs;

c.      For an Order certifying Plaintiffs' Third Claim for Relief in this action as a class claim, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

d.      For an Order designating Plaintiffs as class representatives pursuant to Federal Rule of Civil Procedure 23, and designating counsel for Plaintiffs as counsel for the Class;

e.      For an Order under 26 U.S.C. § 7434(b), finding Defendant Benelux liable for the greater of either $5,000 or the actual damages incurred by Plaintiffs and Putative Class Members for Defendant Benelux's fraudulent filing of their tax information returns;

f.      For an Order awarding Plaintiffs and Putative Class Members unpaid wages at their regular rates of pay under their contracts (express or implied) or under any applicable statute;

g.      For an Order awarding Plaintiffs, Putative Class Members, and Potential Opt-In Plaintiffs the taxable costs and allowable expenses of this action;

h.      For an Order awarding Plaintiffs, Putative Class Members, and Potential Opt-In Plaintiffs their reasonable attorneys' fees; and

i.      For an Order awarding Plaintiffs, Putative Class Members and Potential Opt-In Plaintiffs pre-judgment and post-judgment interest at the highest rates allowed by law;

j.      For an Order awarding Plaintiffs declaratory and injunctive relief as necessary to prevent Defendants' further violations, and to effectuate the purposes, of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*; and

k.      For an Order granting such other and further relief, at law or in equity, as this Court

deems just and proper.

Respectfully submitted,

/s/ Ryan O. Estes
Ryan Estes
Texas Bar No. 24120586
restes@kaplanlawatx.com

Caitlin Boehne
Texas Bar No. 24075815
cboehne@kaplanlawatx.com

Tanner Scheef
Texas Bar No. 24129188
tscheef@kaplanlawatx.com

Austin Kaplan
Texas Bar No. 24072176
akaplan@kaplanlawatx.com

**KAPLAN LAW FIRM, PLLC**
2901 Bee Cave Road, Suite G
Austin, Texas 78746
Tel.: (512) 814-7348
Fax: (512) 692-2788

*Attorneys for Plaintiffs, Putative Class Members, and Potential Opt-In Plaintiffs*