IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

MAGGIE MONTES and BREONA HORNE,       §
                                      §
            Plaintiffs,               §
                                      §
v.                                    §        1:24-CV-276-RP
                                      §
BENELUX CORPORATION, *d/b/a*          §
*PALAZIO MEN'S CLUB*, ANTHANASES      §
STAMATOPOULOUS, and MICHAEL           §
MEALEY,                               §
                                      §
            Defendants.               §

## ORDER

Before the Court is Plaintiffs Maggie Montes and Breona Horne's ("Plaintiffs")[1] Motion for

Class Certification, (Dkt. 56), Plaintiffs' Motion for Partial Summary Judgment, (Dkt. 63), and

Defendant Benelux Corporation d/b/a Palazio Men's Club's ("Palazio") Motion for Partial

Summary Judgment of Plaintiffs' 26 U.S.C. § 7434 Claim, (Dkt. 64).[2] Having considered the parties'

arguments, the record, and the relevant law, the Court finds that Plaintiffs' Motion for Partial

Summary Judgment, (Dkt. 63), should be granted in part; Palazio's Motion for Partial Summary

Judgment of Plaintiffs' 26 U.S.C. § 7434 Claim, (Dkt. 64), should be denied; and Plaintiffs' Motion

for Class Certification, (Dkt. 56), should be granted in part.

---

[1] Multiples Plaintiffs (Octavia Mertens, Angelica Herrera, and Kelly Sanchez) are pursuing their claims in arbitration. This Court's Order denying Defendants' motion to compel Plaintiff Belen Cadena to arbitration, (Dkt. 20), was affirmed by the Fifth Circuit after the instant motions were filed. (Mandate, Dkt. 76). Plaintiffs provide that the instant motions are made only on behalf of Plaintiffs Horne and Montes. (Pls.' Mot. Partial Summ. J., Dkt. 63, at 2; Mot. Class Cert., Dkt. 56, at 2).
[2] The Court will address Defendants' Motion for Partial Summary Judgment on Plaintiffs' State Law Claims, (Dkt. 65), by separate order.

## I. BACKGROUND

This is a hybrid opt-out Rule 23 class action and an opt-in collective action under the Fair Labor Standards Act ("FLSA"). Plaintiffs were waitresses at Palazio, a night club with adult entertainment operated by Defendants Palazio, Anthanases Stamatopoulous, and Michael Mealey (collectively, "Defendants").[3] (Second Am. Compl., Dkt. 48, at 1). Palazio employed Horne from approximately February 2017 to January 2024[4] and Montes from approximately April 2017 to February 2022. (*Id.* at 4). At all times relevant to this case, Palazio's waitresses had the same job duties and were paid the same hourly wage, $2.13 per hour plus tips received from customers. (Second Am. Compl., Dkt. 48, at 5; Mealey Dep., Dkt. 52-1, at 4–5). Plaintiffs assert that Defendants failed to pay them for compensable time. (Horne Dep., Dkt. 52-2, at 3–5, 7–8, 15; Mealey Dep., Dkt. 52-1, at 9; Montes Dep., Dkt. 52-3, at 8, 10–11). Plaintiffs also claim that Defendants required them to share tips in violation of the FLSA and took illegal deductions from waitresses' pay.[5] (Second Am. Compl., Dkt. 48, at 6; Horne Dep., Dkt. 52-2, at 10–15; Montes Dep., Dkt. 52-3, at 4, 6–7). Relatedly, Plaintiffs claim that Defendants provided them with paystubs for the amount of money they earned **prior** to the mandatory tip-out, resulting in Defendants promulgating false W-2 and 1099 Forms that overreported Plaintiffs' incomes to the Internal Revenue Service ("IRS"). (Second Am. Compl., Dkt. 48, at 6; Horne Dep., Dkt. 63-2, at 3; Montes Dep., Dkt. 63-3, at 3).

---

[3] Plaintiffs' claims for tax fraud and breach of contract or quasi-contract are brought solely against Palazio and not against the individual Defendants. (Mot. Class Cert., Dkt. 56, at 2 n.2).

[4] Though the Second Amended Complaint alleges that Horne worked at Palazio until approximately February 2024, she testified at her deposition that she quit in January 2024. (Second Am. Compl., Dkt. 48, at 4; Horne Dep., Dkt. 57-2, at 4).

[5] This practice of requiring waitstaff to participate in a tip pool and provide some of their tips to other employees is called a "tip out." (Pls.' Mot. Partial Summ. J., Dkt. 63, at 2).

Plaintiffs now ask the Court to certify a class of "all current and former wait staff employed by Defendant Benelux at any time six years prior to the filing of this lawsuit to the present, to pursue claims under 26 U.S.C. § 7434 ("Section 7434") for fraudulent filing of information returns and for breach of contract and quasi-contract under Texas law." (Mot. Class Cert., Dkt. 56, at 2). They also ask the Court to grant partial summary judgment on their tax fraud claim brought under Section 7434, on certain affirmative defenses raised by Palazio, and on the fact that Palazio admitted it was an "enterprise" and "employer" of Plaintiffs as those terms are denied under the FLSA. (Pls.' Mot. Partial Summ. J., Dkt. 63, at 2). Palazio has also moved for partial summary judgment on Plaintiffs' tax fraud claim brought under Section 7434. (Palazio Mot. Partial Summ. J., Dkt. 64).

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### B. Motion for Class Certification Under Rule 23

The party seeking to certify a class bears the burden of demonstrating the case is appropriate for class treatment. *See Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001). Class certification is within the district court's discretion, and the decision is essentially a factual inquiry. *See Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502–03 (5th Cir. 2004). The class certification decision should not reach the merits of plaintiffs' claims. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). It may be necessary, however, for a district court to look beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts to make a meaningful certification decision. *Id.* The district court must "conduct a rigorous analysis" under Rule 23 before

4

certifying a class and must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23. *Id.* at 740.

To certify a class, the court must first consider whether the prerequisites of Rule 23(a) have been met. Rule 23(a) states:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1) the class is so numerous that joinder of all parties is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If all four prerequisites of Rule 23(a) are satisfied, a district court may permit the action to be maintained as a class, so long as the action also falls within any one or more of the three categories established by Rule 23(b). In this case, Plaintiff seeks to certify the class pursuant to Rule 23(b)(3), which is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, the Fifth Circuit has interpreted Rule 23 to include an implied prerequisite that the proposed class must be ascertainable. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

### III. DISCUSSION

#### A. Plaintiffs' Partial Motion for Summary Judgment

Plaintiffs move for partial summary judgment on their tax fraud claim brought under Section 7434, on certain affirmative defenses raised by Palazio, and on the fact that Palazio admitted it was

an "enterprise" and "employer" of Plaintiffs as those terms are denied under the FLSA. (Pls.' Mot. Partial Summ. J., Dkt. 63, at 2). The Court will address each of these issues in turn.

### 1. Section 7434 Claim

Plaintiffs argue that they have proven as a matter of law all elements of their tax fraud claim brought under 26 U.S.C. § 7434. According to Plaintiffs, Palazio willfully and fraudulently overreported Plaintiffs' income on W-2 and 1099 Forms by including tips that Plaintiffs were required to "tip out" to other employees and thus did not keep. (Second Am. Compl., Dkt. 48, at 6; Horne Dep., Dkt. 63-2, at 3; Montes Dep., Dkt. 63-3, at 3). As such, Plaintiffs claim that they were overtaxed. (Horne Resp. Interr., Dkt. 63-6, at 5; Montes Resp. Interr., Dkt. 63-6, at 11).

Section 7434 provides:

(a) In general. – If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

(b) Damages. – In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of–

   (1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing),

   (2) the costs of the action, and

   (3) in the court's discretion, reasonable attorneys' fees.

26 U.S.C. § 7434. Though the Fifth Circuit has not yet dictated the elements of a Section 7434 claim, courts across the country agree that a plaintiff must show: "(1) the defendant filed an information return on his or her behalf, (2) the return was false as to the amount paid, and (3) the defendant acted willfully and fraudulently." *See Doherty v. Turner Broad. Sys., Inc.*, 72 F.4th 324, 326 (D.C. Cir. 2023); *see also Chin Hui Hood v. JeJe Enters., Inc.*, 207 F. Supp. 3d 1363, 1378 (N.D. Ga. 2016) (collecting cases and stating that "[c]ourts agree" on the elements of this claim).

Courts have varied, however, with regard to their interpretation of the third element—acting willfully and fraudulently. Some courts have held that "willfulness" in this context "connotes a voluntary, intentional violation of a legal duty," as claims for tax fraud "typically require[] 'intentional wrongdoing.'" *See Vandenheede v. Vecchio*, 541 F. App'x 577, 580 (6th Cir. 2013); *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1298 (S.D. Fla. 2014). This Court is more convinced, however, by the interpretation given by the Court of Appeals for the District of Columbia, which explained that it is "a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." *Doherty*, 72 F.4th at 328 (quoting *Universal Health Servs. v. United States ex el. Escobar*, 579 U.S. 176, 187 (2016)). That "Congress reinforced 'willfully' with 'fraudulent'" in 26 U.S.C. § 7434 "'is a paradigmatic example of a statutory term that incorporates the common-law meaning of fraud." *Id.* According to common law sources, the elements of fraud are "that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false." *Id.* (quoting *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023)).

The Court agrees that, in light of Congress declining to define "willfully" or "fraudulent" in Section 7434 and the Supreme Court's instruction that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well," *Safeco Insurance Co. v. Burr*, 551 U.S. 47, 57 (2007), the common law definition is appropriate in this context. Thus, the Court concludes that Section 7434 "requires a plaintiff to show that (1) the defendant filed an information return on his or her behalf, (2) the return was false as to the amount paid, and (3) the defendant acted willfully and fraudulently, which here is equivalent to knowingly or recklessly." *Doherty*, 72 F.4th at 326. The Court will now determine whether Plaintiffs have satisfied these three elements.

The Court first addresses whether the evidence shows there is a genuine dispute of material fact as to Palazio acting "willfully and fraudulently, which here is equivalent to knowingly or recklessly." *See Doherty*, 72 F.4th at 326. The Court finds that Palazio has successfully raised a genuine dispute of material fact. Tax statutes and regulations make it the employee's responsibility to report to their employer the amount of tips received and amount of tips, if any, paid out to other employees. *See* 26 U.S.C. § 6053 ("Every employee who, in the course of his employment by an employer, receives in any calendar month tips which are wages . . . or which are compensation . . . shall report all such tips in one or more written statements furnished to his employer . . . ."); 26 C.F.R. § 6051-1(a)(vi) (mandating that amounts reported on Form W-2 "shall include only such tips as are reported by the employee to the employer in a written statement furnished to the employer pursuant to section 6053(a)"); 26 C.F.R. 31.6053-4 (mandating that an employee's record of tip income received "shall show for each work day the amount of cash tips and charge tips received . . . and the amount of tips, if any, paid out to the other employees through tip sharing, tip pooling, or other arrangements"). Plaintiffs Horne and Montes testified that they did not keep records of how much they were tipping out other employees and did not report their tip amounts to Palazio. (Horne Dep., Dkt. 68-3, at 39, 52; Montes Dep., Dkt. 68-10, at 39–40).[6]

It is unsettled whether an employee's failure to report their tip-outs to their employer affects the employer's liability under Section 7434. Because Palazio arguably had no choice but to furnish an information return without the information Plaintiffs were statutorily required to provide, a reasonable jury could find that Palazio did not act knowingly or recklessly when it overreported

---

[6] For instance, Plaintiff Horne testified that she "[did not] believe that tip outs to management were being tracked or reported in any way" and that she "was never asked to sign off on" documentation relating to her tip-out amounts. (Horne Dep., Dkt. 68-3, at 49, 52). Plaintiff Montes testified that, while employed at Palazio, she did not have "any kind of understanding about reporting [her] tip income" and that she did not keep a record of tips she received and tips she paid out to other employees. (Montes Dep., Dkt. 68-10, at 40).

8

Plaintiffs' income on their information returns. Accordingly, because a reasonable jury could find for Palazio, Plaintiffs' motion for partial summary judgment on their Section 7434 claim will be denied. The Court thus does not reach the other two elements of Plaintiffs' Section 7434 claim.

## 2. Palazio's Affirmative Defenses

Plaintiffs contend that, even if the Court denies their motion for summary judgment on their Section 7434 claim, summary judgment is still appropriate for certain affirmative defenses raised by Defendants in their Supplemental and Amended Answer to Plaintiffs' Second Amended Complaint, (Dkt. 51, at 9–13). Defendants have the burden of proof on their affirmative defenses at trial. *See F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004) (noting that "[a]n affirmative defense places the burden of proof on the party pleading it"). Thus, because Plaintiffs as the movants "do[] not bear the burden of proof," they can "obtain summary judgment simply by disproving the existence of any essential element of the opposing party's . . . affirmative defense." *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).[7] The Court agrees that summary judgment may be granted in favor of Plaintiffs on two of Defendants' affirmative defenses but will otherwise deny Plaintiffs' motion.

First, Defendants raised the affirmative defense that Plaintiffs' claims under Section 7434 are barred because of the statute of limitations. (*Id.* at 9). Section 7434 provides that an action may be brought "only within the later of . . . (1) 6 years after the date of the filing of the fraudulent information return, or (2) 1 year after the date such fraudulent information return would have been discover by exercise of reasonable care." 26 U.S.C. § 7434(c). Plaintiffs Montes and Horne joined this action with the filing of the First Amended Complaint, (Dkt. 16), which was filed on August 3,

---

[7] *See also Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) ("Under federal law, however, it has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case.").

2024. Plaintiff Montes seeks damages for fraudulent information returns filed for tax years 2018 through 2022, and Plaintiff Horne seeks such damages for tax years 2019 through 2024. (Montes Resp. to Interr., Dkt. 63-6, at 11; Horne Resp. to Interr., Dkt. 63-6, at 6; Pls.' Mot. Partial Summ. J., Dkt. 63, at 7–8). Defendants' Response, (Dkt. 68), does not respond to Plaintiffs' argument that their Section 7434 claims are brought within the statute of limitations. Thus, Plaintiffs have adduced competent summary judgment evidence on this point, and Defendants have not met their burden to raise a fact issue. The Court will therefore grant Plaintiffs summary judgment on Defendants' affirmative defense that Plaintiffs' claims brought under Section 7434 are barred by the statute of limitations.

Second, Defendants raised the affirmative defense that Plaintiffs did not comply with § 7434(d)'s requirement for any person bringing a Section 7434 action to "provide a copy of the complaint to the Internal Revenue Service upon the filing of such a complaint with the court." (Defs.' Supp. and Am. Answer, Dkt. 51, at 9). Plaintiffs submitted with their motion for summary judgment a copy of the letter sent by them to the IRS on April 25, 2025, which had attached a copy of the First Amended Complaint. (IRS Notice of Lawsuit, Dkt. 63-7, at 2–15). They also submitted an exhibit showing confirmation of delivery to the IRS. (Confirmation of Delivery, Dkt. 63-8, at 2). Defendants do not refute Plaintiffs' evidence that they complied with § 7434(d); to the contrary, they acknowledge that Plaintiffs did notify the IRS. (Defs.' Resp., Dkt. 68, at 17 & n.32). The Court will therefore grant Plaintiffs summary judgment on Defendants' § 7434(d) affirmative defense.

Next, Defendants also raised the affirmative defenses of *in pari delicto*, mistake, estoppel, unclean hands, laches, and failure to mitigate as to Plaintiffs' Section 7434 claims. (Defs.' Supp. and Am. Answer, Dkt. 51, at 9, 12). Plaintiffs argue that summary judgment should be granted on these affirmative defenses because Palazio "improperly attempts to . . . shift the burden of [its]

10

compliance" to Plaintiffs, which is "not supported at all by the text of Section 7434." (Pls.' Mot. Partial Summ. J., Dkt. 63, at 9). They point to the fact that Defendant Stamatopoulos testified that he had "no evidence" to support these affirmative defenses other than Plaintiffs' failure to accurately report cash tips. (*Id.*).

First, Plaintiffs do not describe the elements of these six affirmative defenses, let alone argue which essential elements Defendants do not meet. *See Austin*, 864 F.3d at 335; *Fontenot*, 780 F.2d at 1194. Second, Defendants have provided evidence that Plaintiffs failed to record their tip income and tip-outs and report that information to Palazio. For these reasons, the Court will deny Plaintiffs' motion for summary judgment on Defendants' affirmative defenses of *in pari delicto*, mistake, estoppel, unclean hands, laches, and failure to mitigate without prejudice.

Finally, Defendants raise the affirmative defenses of preemption for Plaintiffs' common-law claims; statute of limitations for Plaintiffs' breach of contract claim; ratification of a contract; material breach by Plaintiffs; statute of frauds; lack of consideration; doctrine of voluntary payment; waiver; and estoppel. (*Id.* at 10–12). Similarly, Plaintiffs only vaguely challenge these affirmative defenses in their motion; they solely point to these paragraphs of Defendants' answer and argue that Defendants "do not have underlying factual support" for them. Plaintiffs' argument is conclusory and does not explain how Defendants lack evidence for "any essential element of [these] affirmative defense[s]." *See Fontenot*, 780 F.2d at 1194. Accordingly, the Court will deny Plaintiffs' motion for summary judgment on the affirmative defenses of preemption for Plaintiffs' common-law claims; statute of limitations for Plaintiffs' breach of contract claim; ratification of a contract; material

11

breach by Plaintiffs; statute of frauds; lack of consideration; doctrine of voluntary payment; waiver; and estoppel without prejudice.[8]

### 3. Palazio's "Enterprise" Status and the Employer/Employee Relationship Under the FLSA

Plaintiffs argue that they should be granted summary judgment on the element of their FLSA claim that Palazio is "covered as an enterprise under the FLSA and was the employer of Plaintiffs within the meaning [of] the FLSA" based on Palazio's admissions. (Pls.' Mot. Partial Summ. J., Dkt. 63, at 10). They further assert that, based on these admissions, Palazio "should not be able to argue to the contrary that it operated as an 'enterprise' and was Plaintiffs' 'employer' and Plaintiffs were 'employees'" of [Palazio] as those terms are defined in the FLSA." (*Id.*).

Palazio indeed admits that, under the FLSA, it was their "employer," Plaintiffs were its "employees," and it qualifies as an "enterprise."[9] (Supp. Am. Answer, Dkt. 51, at 7). Palazio does not dispute this element of Plaintiffs' FLSA claim in its Response, (Dkt. 68). The Court will therefore grant summary judgment on this element of Plaintiffs' FLSA claim.

### B. Palazio's Partial Motion for Summary Judgment

Palazio moves for summary judgment on Plaintiffs' § 7434 cause of action. (Palazio Mot. Partial Summ. J., Dkt. 64, at 1). The Court has already outlined the elements of this claim, which Plaintiffs must prove at trial: "(1) the defendant filed an information return on his or her behalf, (2) the return was false as to the amount paid, and (3) the defendant acted willfully and fraudulently, which here is equivalent to knowingly or recklessly." *Doherty*, 72 F.4th at 326.

---

[8] Defendants' answer raises a number of other affirmative defenses that are not raised by Plaintiffs in their motion for partial summary judgment (e.g., statute of limitations regarding Plaintiffs' breach of contract claim and quantum meruit claim). Because Plaintiffs did not move for summary judgment on these other affirmative defenses, the Court does not reach them.

[9] Defendants Stamatopoulos and Mealey deny being an "employer," that Plaintiffs were their "employees," and that they were an "enterprise" for the purposes of the FLSA. (Supp. Am. Answer, Dkt. 51, at 7).

As with Plaintiffs' motion, the Court will first address the third element. Palazio contends that, because Plaintiffs had the duty under the tax code to report their tip income (amount received and tip-outs), and because Palazio has submitted evidence that Plaintiffs failed to meet that duty, Plaintiffs cannot establish Palazio willfully violated any legal duty.[10] (Palazio Mot. Partial Summ. J., Dkt. 64, at 14; Montes Dep., Dkt. 64-14, at 40; Horne Dep., Dkt. 64-5, at 39). The Court finds that this is enough to shift the burden to Plaintiffs to cite evidence in the record sufficient to establish a fact issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

Plaintiffs respond that Palazio knew it was not accounting for the mandatory tip-outs imposed on its waitstaff when it calculated Plaintiffs' tip income. (Pls.' Resp., Dkt. 66, at 10). For example, in his Rule 30(b)(6) deposition, Defendant Mealey acknowledged that waitstaff were required to tip out bartenders and that their failure to track tip-out amounts was a "mistake" based on "policies that were in place." (Mealey Dep., Dkt. 66-1, at 9–10). Based on this evidence that Palazio knew its waitstaff were required to share tips but had a policy in place to not make adjustments when reporting its waitstaff's income, a reasonable jury could find that Palazio knew or was reckless in not knowing that it was over-reporting its waitstaff's tip income and that this is sufficient for liability under Section 7434, regardless of Plaintiffs' own reporting duties. As with Plaintiffs' motion, Palazio has not convinced the Court that they are entitled to judgment as a matter of law on the "willfully and fraudulently" element of the Section 7434 claim, as this appears to be a fact-intensive inquiry inappropriate for resolution by the Court. Plaintiffs have therefore successfully raised a fact issue that must be determined by a jury. The Court will therefore deny Palazio's motion

---

[10] The Court notes that, as discussed in Section III(A)(1), *supra*, it has defined "willfully and fraudulently" in § 7434 differently than Palazio, as Palazio's definition would exclude acting knowingly or recklessly.

for summary judgment on Plaintiffs' Section 7434 claim and will not reach the other two elements of the claim.

### C. Plaintiffs' Motion for Class Certification

Plaintiffs move to certify a class of all current and former waitstaff employed by Palazio for the six years prior to the filing of this lawsuit to the present to pursue claims under Section 7434, breach of contract under Texas law, and quasi-contract under Texas law. (Mot. Class. Cert., Dkt. 56, at 2). Though this proposed class definition does not explicitly exclude the waitstaff who signed arbitration agreements, including a class action waiver, Plaintiffs' substantive arguments clarify that the proposed class solely includes those who did not sign such a waiver.[11] The Court will first address whether certification is appropriate for Plaintiffs' contract-based claims and then address certification for Plaintiffs' Section 7434 claims. *See Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000) ("Certification on a claim-by-claim, rather than holistic, basis is necessary to preserve the efficiencies of the class action device without sacrificing the procedural protections it affords to unnamed class members."); *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839–41 (5th Cir. 2012) ("Both standing and class certification must be addressed on a claim-by-claim basis.").

### 1. Breach-of-Contract and Quasi-Contract Claims

Plaintiffs seek certification on their claim that "Defendants uniformly failed to pay wait staff for all compensable time worked, in violation of their employment contracts." (Mot. Class Cert.,

---

[11] Plaintiffs provide a spreadsheet listing waitstaff who worked for Palazio during the relevant time period. (Employee Spreadsheet, Dkt. 56-9). It includes 449 employees, approximately 150 of whom did not sign an arbitration agreement with a class action waiver. (*Id.*). Plaintiffs' arguments limit putative class members to those 150 employees. For instance, Plaintiffs provide: "Plaintiffs . . . move to certify a class of over 150 current and former wait staff who were subjected to Defendant's unlawful off-the-clock and tax reporting practices." (Mot. Class Cert., Dkt. 56, at 2). Thus, the Court will consider the proposed class definition to exclude those who signed a class waiver.

Dkt. 56, at 4). "This off-the-clock time included time wait staff attended mandatory meetings at the club; time promoting the club off-site, including on social media; time promoting the club on-site, by attending to regular customers on their nights off, as 'guests'; and time preparing for their shift at the club." (*Id.* at 4). The Court will address each requirement for class certification in turn.

### a. Numerosity

First, Rule 23 requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs generally must "demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)). The Fifth Circuit has acknowledged that a class of approximately 100–150 members is "within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624–25 (5th Cir. 1999) (citing *Zeidman*, 651 F.2d at 1038). It has also cited favorably a treatise's statement that a class of more than forty members "should raise a presumption that joinder is impracticable."[12] *Id.* at 624 (citing 1 Newberg on Class Actions § 3.05, at 3–25 (3d ed. 1992)).

Plaintiffs estimate that the class would include "at least 150 former and current Palazio employees exempt from arbitration proceedings (and who did not sign class action waivers)." (Mot. Class Cert., Dkt. 56, at 8). They point to a spreadsheet, (Dkt. 56-9), of 152 current and former employees for whom Palazio did not produce an arbitration agreement.[13] Plaintiffs also argue that

---

[12] Other circuit courts agree that a putative class of at least 40 members generally—though not always—meets the numerosity requirement. *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018).
[13] The arbitration agreement is relevant in this context because the agreement used by Palazio also included a class action waiver. (Arbitration Agr., Dkt. 6-2, at 2–3). The spreadsheet attached to Plaintiffs' motion includes approximately 300 individuals for whom an arbitration agreement was produced.

the putative class members being service industry employees cuts in favor of the numerosity requirement being satisfied; because they earned $2.13 per hour plus tips, Plaintiffs assert, many putative class members likely do not have the resources to bring litigation on their own. (Mot. Class Cert., Dkt. 56, at 8). Plaintiffs additionally point to high turnover among waitstaff at Palazio,[14] which they contend increases the likelihood of geographical dispersal and cuts against the ease with which class members may be identified. (*Id.*).

Plaintiffs, however, have not introduced "any evidence or reasonable estimate" of the number of putative class members for their contract-based claims. *See Pederson*, 213 F.3d at 868 (quoting *Zeidman*, 651 F.2d at 1038) (holding that plaintiffs generally must "demonstrate some evidence or reasonable estimate of the number of purported class members"); *Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092-MAC, 2022 WL 16702811 (E.D. Tex. Oct. 18, 2022), *report and recommendation adopted,* No. 1:20-CV-92, 2022 WL 16701098 (E.D. Tex. Nov. 2, 2022). In *Roberts*, the court declined to certify a class of approximately 244 to 350 members, as it was not clear how many putative class members were injured. *Id.* at *6–7. Plaintiffs argue in their reply that, unlike in *Roberts*, Palazio "has provided a list of over 150 people (who have not signed arbitration agreements) who worked for them as wait staff during the relevant time period" and that "all or virtually all of the over 150 potential class members have tax fraud claims." (Reply, Dkt. 61, at 6). Even accepting as true that all 150 of these individuals have claims under Section 7434, Plaintiffs do not point to any evidence regarding the number of individuals with contract-based claims. To the contrary, Plaintiff Horne admitted that she did not know how many waitresses promoted Palazio on social media while off the clock. (Horne Dep., Dkt. 56-3, at 6). Additionally, regarding Plaintiffs' claim that they were

---

[14] *See* Horne Dep., Dkt. 56-3, at 3 (noting that Palazio was "constantly hiring new staff"). *Compare* Mealey Dep., Dkt. 56-1, at 3 (stating that Palazio typically had 30 waitstaff employed), *with* 2018–2024 List of Employees (listing approximately 450 employees as waitstaff since March 12, 2018).

not paid for attending mandatory meetings, Plaintiff Horne stated that there were approximately two to four mandatory meetings per year where waitstaff were not paid. (*Id.* at 4). Considering many of the 152 employees who did not sign arbitration agreements worked at Palazio for as few as one day or a few months, many of these employees likely did not attend *any* of these mandatory meetings. Similarly, though Plaintiff Horne testified that waitstaff were "encouraged to do . . . guest shifts" at Palazio on their night off, (*id.* at 6), Plaintiffs provide no estimate for how many employees in fact completed those guest shifts. And, likewise, though Plaintiffs themselves testified that they often did not clock in immediately upon arrival, such that they were not compensated for all of their time getting ready for their shifts, (Horne Dep., Dkt. 56-3, at 10; Montes Dep., Dkt. 56-4, at 5), Plaintiff Montes testified "[n]o" when asked whether "anyone ever [told her] . . . don't clock in when you arrive." (Montes Dep., Dkt. 56-4, at 5). Her testimony that "[i]t wasn't enforced to clock in immediately," (*id.*), is not sufficient for the Court to find that many other waitstaff did not clock in before getting ready. *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253 (5th Cir. 2020) (quoting *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005)) (explaining that Rule 23 "requires the court to 'find,' not merely assume, the facts favoring class certification").

In summary, Plaintiffs do not provide the Court with any estimate of how many individuals suffered these same alleged contract-related injuries. The Court has a duty to undertake a "rigorous analysis" under Rule 23(a). *Stukenberg*, 675 F.3d at 840. Though it is possible that a sufficient number of putative class members do in fact exist for these claims, it would be impermissible for the Court to "assume" such facts. *See Cruson*, 954 F.3d at 235 (quoting *Unger*, 401 F.3d at 321). Accordingly, the Court will not reach the other elements of its class certification analysis for Plaintiffs' contract-related claims. The Court will now turn to whether class certification is appropriate for Plaintiffs' Section 7434 claim.

17

### 2. Section 7434 Claim

Plaintiffs claim that Palazio instituted "uniform policies that . . . fraudulently overreported their income to the IRS." (Mot. Class Cert., Dkt. 56, at 3). They point to Defendant Mealey's testimony in his Rule 30(b)(6) deposition, in which he admitted Palazio required waitstaff to tip out other employees but did not track the amount tipped out to other workers. (Mealey Dep., Dkt. 56-1, at 22). Plaintiffs assert that they and the putative class members were injured by these uniform policies, making their Section 7434 claim fit for class certification.

### a. Numerosity

Plaintiffs assert that the size of the putative class demonstrates that joinder of all members is impracticable. They point out that district courts have certified classes asserting a Section 7434 with around 40 putative members. *See, e.g.*, *Celeski v. Tom Brown's Rest. at Madison LLC*, No. 5:22-CV-01600-HNJ, 2025 WL 2741829, at *6 (N.D. Ala. Mar. 27, 2025) (holding that a putative class of 40 employees was large enough to meet Rule 23's numerosity requirement in a case involving a Section 7434 claim); *Rios-Gutierrez v. Briggs Traditional Turf Farm, Inc.*, 344 F.R.D. 196, 201–02 (W.D. Mo. 2022) (same, for 43 employees). Additionally, as noted in Section III(C)(1)(a), *supra*, Plaintiffs put forth two more factors that they claim cut in favor of class certification: (1) that the putative class members being service industry employees means they likely lack resources to hire a lawyer and (2) that the high turnover among waitstaff at Palazio, such that only 2% of putative class members continue to work there, increases the likelihood of geographical dispersal and cuts against the ease with which class members may be identified. (Mot. Class Cert., Dkt. 56, at 8; Reply, Dkt. 61, at 5).

Defendants respond that Plaintiffs have failed to show that joinder of all members is impracticable; do not offer proof that the proposed class is a transient population; do not address that all putative members worked at one location; and do not have support for their contention that

18

service-industry workers lack access to lawyers. (Resp., Dkt. 59, at 5–6). Defendants cite as support *Jaynes v. United States*, 69 Fed. Cl. 450, 454 (2006), in which the court found that a proposed class of approximately 250 members did not satisfy the numerosity requirement because all individuals worked at one location. But, as Plaintiffs point out, 74% of the putative class members in *Jaynes* were still working at the same location. *See id.* Here, however, it appears that only approximately 2% of the putative class members—3 out of 152—still work at Palazio. (Reply, Dkt. 61, at 5). *Jaynes* is therefore highly distinguishable. Moreover, though the Court found the reasoning in *Roberts*, 2022 WL 16702811, to be persuasive for Plaintiffs' contract-based claims, the reasoning in *Roberts* does not apply to Plaintiffs' Section 7434 claim. For this claim, based on the spreadsheet of waitstaff provided, (Dkt. 56-9), Plaintiffs do have a reasonable estimate for the putative class's size.

Defendants make a well-taken point that approximately 50 of the individuals listed on the spreadsheet of employees for whom an arbitration agreement was not produced worked for seven days or fewer at Palazio, such that they may not have earned enough money to trigger IRS reporting requirements. (Resp., Dkt. 59, at 5). Plaintiffs assert in their Reply that waitstaff typically earned over $1,500 in a two-week pay period. (Reply, Dkt. 61, at 4 (citing Palazio Payroll Records, Dkt. 56-2)). Because the Internal Revenue Code requires employers to furnish an information return for any employee who earns more than $600 per year, 26 U.S.C. § 6041(a) Plaintiffs contend that the Court can safely presume that Palazio would "ostensibly be required to issue a Form W-2 for virtually any employee." (*Id.*).

The Court disagrees with Plaintiffs' contention that Palazio would "ostensibly be required to issue a Form W-2 for *virtually any employee*." (Reply, Dkt. 61, at 4 (emphasis added)). After a review of the dates listed on the employee records provided to the Court, (Dkt. 56-9), the Court has noted that a substantial number of employees on the list appear to have worked at Palazio for only one or

19

two days. The Court will not assume that these employees made over $600 in their one or two days

of employment. Moreover, the Court finds it would likely not be burdensome for Palazio to produce

a list of waitstaff employed during the relevant time period for whom Palazio did in fact furnish an

information return. The Court will therefore act within its discretion to narrow the class definition

to waitstaff for whom Palazio furnished an information return. *See In re Monumental Life Ins. Co.*, 365

F.3d 408, 414 (5th Cir. 2004) (first citing *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993); then

citing *Harris v. Gen. Dev. Corp.*, 127 F.R.D. 655, 659 (N.D. Ill. 1989); and then citing *Meyer v. Citizens*

*& S. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D. Ga. 1985)) ("District courts are permitted to limit or

modify class definitions to provide the necessary precision.").

Even with the modified class definition, which will likely remove approximately 50 waitstaff

who did not earn enough income at Palazio for Palazio to furnish an information return for them,

there are still approximately 100 injured putative class members. This number tilts in favor of the

numerosity requirement being met. *See Mullen*, 186 F.3d at 624–25. Moreover, the Court agrees with

Plaintiffs that, because the putative class members may have claims that are relatively low in value

compared to the cost of securing counsel and litigating their case, these putative class members may

struggle to find individual representation or may not be motivated to individually pursue their

claims. Thus, in light of the size of the putative class, the significant likelihood of geographic

dispersal,[15] and the likely size of each putative class member's claim, the Court finds that the

proposed class satisfies the numerosity requirement.

---

[15] The Fifth Circuit has approved of district courts inferring geographic dispersal, even if there is no specific evidence that putative class members have moved out of the area. *See Mullen*, 186 F.3d at 624–25. The high turnover rate of waitstaff at Palazio, such that only 2% of putative class members continue to work there (3 out of 152), leads to an inference that at least a meaningful proportion of the putative class no longer live in the area.

### b. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"[16] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Plaintiffs therefore must demonstrate that the class claims "'depend upon a common contention' and the common contention 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quoting *Wal-Mart Stores*, 564 U.S. at 350). It is not enough "that they have all suffered a violation of the same provision of law," as laws can often be violated in a multitude of ways. *Wal-Mart Stores*, 564 U.S. at 350.

Plaintiffs argue that "virtually all of the issues [in this case] are common to the class members."[17] (Mot. Class Cert., Dkt. 56, at 9). They point to issues such as (1) whether Palazio overreported Plaintiffs' and the putative class members' income on information returns in violation of Section 7434; (2) if so, whether Palazio acting willfully in doing so; [and] (3) the appropriate formulae to measure damages under Section 7434." (*Id.*). Plaintiffs further contend that the answers

---

[16] Common questions that do not demonstrate whether the class members have "suffered the same injury" are not sufficient to warrant class certification. *See Wal-Mart Stores*, 564 U.S. at 349 (explaining that questions like "Do all of us plaintiffs indeed work for Wal-Mart?" and "What remedies should we get?" are "not sufficient to obtain class certification").

[17] The Court notes that this section of Plaintiffs' briefing contains outdated statements of the law. For instance, Plaintiffs assert: "The commonality test is met when there is '[a]t least one issue, the resolution of which will affect all or a significant number of the putative class members.' *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)." (Mot. Class Cert., Dkt. 56, at 9). After the Supreme Court's decision in *Wal-Mart v. Dukes*, however, the Fifth Circuit stated: "Thus, the commonality test is no longer met when the proposed class merely establishes that 'there is at least one issue whose resolution *will affect all or a significant number* of the putative class members.' . . . Rather, Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal–Mart,* 564 U.S. at 350) (quotation modified) (emphasis in original).

to these "common questions will be driven by common evidence," such as Palazio's admission that it overreported waitstaff's earnings. (*Id.* at 9–10).

Palazio's argument in opposition is largely premised on the merits of whether it is liable: "Therein lies the basic problem with Plaintiffs' Section 7434 claim from a commonality standpoint—the theory of liability advanced assumes as its premise that [Palazio's] 'policy of failing to account for mandated tip-outs when reporting wait staff's earnings to the IRS' violates what the [Internal Revenue Code] has to say about tip reporting." (Resp., Dkt. 59, at 8). Palazio's argument misses the mark. Because the Court has modified the class definitions to solely include waitstaff for whom Palazio furnished an information return, if a jury finds that Palazio is liable under Section 7434 for its policy of over-reporting its waitstaff's income, that decision regarding liability—a common question of law—is central to a claim brought by Plaintiffs and all putative class members. This is especially true given that Palazio is alleged to have violated Section 7434 in the same way against Plaintiffs and all putative class members. Thus, there is a common issue of law whose resolution "will resolve an issue that is central to the validity" of Plaintiffs' and the putative class members' Section 7434 claim "in one stroke." *Wal-Mart Stores*, 564 U.S. at 350.

### c. Typicality

The third requirement of Rule 23(a) is that the representative parties' claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). The "commonality and typicality requirements of Rule 23(a) tend to merge." *In re Deepwater Horizon*, 739 F.3d 790, 827 (5th Cir. 2014) (quoting *Wal-Mart Stores*, 564 U.S. at 349 n.5). Typicality requires that the class representative's "claims have the same essential characteristics of those of the putative class." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023) (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). "If the claims arise from a similar course of conduct and share the same legal

theory, factual differences will not defeat typicality." *Id.* (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)).

Plaintiffs argue that their claims are typical of the class, as their Section 7434 claim "arise[s] from the same events and practices." (Mot. Certify Class, Dkt. 56, at 12). They point to Defendant Mealey's testimony that Palazio's workplace practices were implemented across all wait staff. (*Id.*). Plaintiffs also argue that they "are pursuing the same remedies." (*Id.*). Palazio argues in response that (1) Plaintiffs appear to be pursuing a procedural violation of Section 7434, and their lack of interest in pursuing actual damages is in conflict with the interests of putative class members who may wish to seek actual damages and (2) the fact that Plaintiffs "fail[e]d to . . . report their tip income to Benelux" as required by tax statutes and regulations and filed "long overdue tax returns with the IRS in the midst of litigation . . . subjects their claims to unique defenses such as . . . unclean hands and laches."[18] (Resp., Dkt. 59, at 15–17).

Plaintiffs argue in their Reply that they do have actual damages to show, though "[w]hether or not those actual damages fall below or above the $5,000 floor of damages allowed for under § 7434(b) is a separate question, very amenable to class treatment." (Reply, Dkt. 61, at 9). The Court agrees with Plaintiffs that the issue of which damages they will ultimately seek does not make Plaintiffs atypical. *See Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297 (5th Cir. 2001) (holding that the district court did not abuse its discretion in finding typicality because, "although some theories about damages may differ, all plaintiffs share the same theories of liability"). Moreover, given that it appears highly likely that Plaintiffs and putative class members will face similar

---

[18] Palazio also argued that Plaintiffs are not typical because "about two-thirds of the class members who they purport to represent" signed an arbitration agreement with a class action waiver, while Plaintiffs did not. (Resp., Dkt. 59, at 15). Yet, as the Court explained in footnote 11, *supra*, Plaintiffs are limiting putative class members to those who did not sign a valid arbitration agreement with a class action waiver. This argument by Palazio is therefore moot.

difficulties in calculating their actual damages—see *infra* Section III(C)(2)(f)—Plaintiffs are typical of the class.[19]

Additionally, any other differences relating to Plaintiffs' failure to report their tip-outs or their late filing of tax returns are "factual differences [that] will not defeat typicality" given that the putative class members' claims otherwise "arise from a similar course of conduct and share the same legal theory." *See Angell*, 67 F.4th at 736 (quoting *James*, 254 F.3d at 571) ("If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."). The Court disagrees that Palazio's raising of "equitable defenses such as unclean hands and laches," (Resp., Dkt. 59, at 17), would result in Plaintiffs being overly "preoccupied with a defense which is applicable only to" them such that the defenses would "threaten to become the focus of the litigation" or that their interests would conflict with putative class members' interests. *See Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 205 (N.D. Tex. 1997); *Warren v. Reserve Fund, Inc.*, 728 F.2d 741, 747 (5th Cir. 1984) (citing *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) (noting the concern that "representation of a class may suffer if the named plaintiff is preoccupied with a defense which is applicable only to himself"). *See also Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 137 (5th Cir. 2005) ("[W]e reject appellants' claim that the presence of an arguable unique defense necessarily destroys typicality."). For instance, considering that Plaintiffs have admitted to filing late tax returns, whether or not they did so will not take substantial time at trial. (*See* Horne Dep., Dkt. 60-3, at 57; Montes Dep., Dkt. 60-6, at 48–49). Plus, it appears likely that, like Plaintiffs, **no** putative class members properly reported their tip income to Palazio.

---

[19] To the extent Plaintiffs decide to seek only statutory damages, and to the extent any putative class members *did* keep records of their tip-out amounts and wish to pursue actual damages, they may opt out of this class action. *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring that, for any class certified under Rule 23(b)(3), the notice sent to class members must include "that the court will exclude from the class any member who requests exclusion"). *See also Bertulli*, 242 F.3d at 297–98 (noting that "since this is a 23(b)(3) class, dissatisfied class members have the right to opt out of the class").

Defendant Mealey agreed at his Rule 30(b)(6) deposition that "there was no record of *any* waitstaff's tip-out to workers" during the relevant time period. (Mealey Dep., Dkt. 56-1, at 22) (emphasis added). As such, regarding its waitstaff's failure to report tip-outs, Palazio likely could raise the same equitable defenses as to all putative class members, not just Plaintiffs. Thus, Plaintiffs have satisfied their burden on the typicality requirement.

### d. Adequacy

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In the Fifth Circuit, "the adequacy requirement mandates an inquiry into (1) the zeal and competence of the representatives' counsel and . . . (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982) (alterations omitted)).[20] As with all Rule 23(a) requirements, the party seeking certification bears the burden of establishing adequacy. *Berger*, 257 F.3d at 481.

First, the Court considers whether Plaintiffs' counsel have the necessary "zeal and competence" to fairly and adequately protect the interests of the class under Rule 23(a). Plaintiffs' counsel have significant experience representing employees, including in class actions. (Kaplan Aff., Dkt. 56-11). Moreover, in this case, they succeeded in opposing a motion to compel arbitration and successfully opposed an appeal of that Order before the Fifth Circuit. (*Id.*; Fifth Circuit Mandate Affirming Denial of Motion to Compel, Dkt. 76). Plaintiffs' counsel also declare no known conflicts of interest that would prevent the firm from providing zealous representation of Plaintiffs and the

---

[20] Although *Berger* held that the Private Securities Litigation Reform Act "raises the standard adequacy threshold" in securities fraud class actions, *id.* at 483, the Fifth Circuit made clear in *Berger II* that this did not "change the law of this circuit regarding the standard for conducting a [R]ule 23(a)(4) adequacy inquiry" in any other type of class actions. *Berger v. Compaq Computer Corp.*, 279 F.3d 313 (5th Cir. 2002) (per curiam).

class. (Kaplan Aff., Dkt. 56-11, at 8). Palazio does not contest that Plaintiffs' counsel would adequately represent the proposed class. Thus, the Court finds that the adequacy requirement is satisfied as to putative class counsel.

Second, the Court considers whether Plaintiffs as the representative parties would fairly and adequately represent the interests of the class. Plaintiffs contend that their interests are "co-extensive with those of the other class members," that they have "fully agreed to participate in this litigation, knowing that it was to be brought as a class action," that they discussed the nature of a class action with their counsel, and that they discussed the potential advantages and disadvantages and proceeding in a class action, rather than individually. (Mot. Class Cert., Dkt. 56, at 14). Plaintiffs' counsel represents that "[e]ach Plaintiff has been an active participant in this litigation." (Kaplan Aff., Dkt. 56-11, at 8). Finally, Plaintiffs assert that they have no conflict of interest with other putative class members. (Mot. Class Cert., Dkt. 56, at 14).

Palazio responds that Plaintiffs' Section 7434 claim may expose certain putative class members to tax penalties, so a class action may not be in these individuals' best interest, "particularly those who earned unreported cash tips at the Club." (Resp., Dkt. 59, at 17). The Court finds this argument to be unpersuasive. Because Plaintiffs have submitted evidence that cash tips were rare,[21] it is highly likely that a penalty would be relatively low as compared to the damages they would receive should this class be certified and Plaintiffs ultimately succeed on their Section 7434 claim. This alleged conflict of interest therefore does not prevent Plaintiffs from being adequate representatives.

---

[21] Plaintiff Horne testified that "[a] lot of people did not pay in cash" and that she only received about "five to ten bucks a week" in cash tips. (Horne Dep., Dkt. 61-1, at 7).

Finally, Palazio again raises that Plaintiffs' "failures to . . . report their tip income" and "decision[s] to file long overdue tax returns with the IRS" creates an adequacy issue.[22] (Resp., Dkt. 59, at 17). The Court disagrees for the same reasons stated in Section III(C)(2)(c), *supra*. The Court similarly finds here that these potential unique defenses do not create a conflict that would make Plaintiffs inadequate representatives. Palazio would likely raise similar equitable defenses against all putative class members (i.e., the defense of unclean hands for the class members' failure to report tip-out amounts). Plaintiffs would therefore be adequate class representatives.

The Court concludes that Plaintiffs have met the adequacy requirement, satisfying the final requirement for class certification under Rule 23(a). Because Plaintiffs seek to certify a class under Rule 23(b)(3), the Court next considers where Plaintiffs have satisfied the additional requirements of superiority and dominance.

### e. Superiority

Rule 23(b)(3) imposes two further requirements for class certification. Rule 23(b)(3)'s superiority requirement asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "As is the case with Rule 23(b)(3) generally, the superiority analysis is fact-specific and will vary depending on the circumstances of any given case." *Robertson v. Monsanto Co.*, 287 F. App'x 354, 361 (5th Cir. 2008) (citing 7AA Charles Alan Wright, et al., Federal Practice and Procedure § 1783 (3d ed. 2005)). The four factors that address superiority are: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the

---

[22] Palazio also argues that Plaintiffs claims are atypical regarding their "off-the-clock" activities. (Resp., Dkt. 59, at 17). Because the Court has already denied class certification of Plaintiffs' contract-based claims, the Court does not reach this argument.

desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Plaintiffs contend that a class action is superior to individual lawsuits in this context, as individual actions would have "relatively small amounts in controversy, each presenting identical proof to the courts." (Mot. Class Cert., Dkt. 56, at 19). They point out that "many class members would likely abandon their legitimate claims against Defendant due to frustration or inability to obtain counsel on claims with relatively low amounts in controversy–potentially a maximum of $5,000 per year worked." (*Id.*). Next, addressing the first two factors mentioned in Rule 23(b)(3), Plaintiffs represent that, "after a diligent search, class counsel is aware of no other litigation concerning the present controversy, or of any absent class members' interest in pursuing an individual claim." (*Id.* at 20; Kaplan Aff., Dkt. 56-11, at 8). Regarding the third factor, they state that this Court is the most desirable forum for this action, as all actions giving rise to this litigation occurred in the Western District of Texas and Plaintiffs reside in this District. (Mot. Class Cert., Dkt. 56, at 20). Finally, as to the fourth factor in Rule 23(b)(3), Plaintiffs claim that the putative class is not too large to create managerial difficulties and that this case "raises no special concerns that would indicate practical or administrative difficulties." (*Id.*).

Palazio responds that a class action is not superior because class members may not wish to "implicate personal financial information . . . or may instead prefer doing so on an individual basis." (Resp., Dkt. 59, at 24). To the extent class members are concerned about producing sensitive financial information, the Court has already entered two protective orders in this case. (Protective Order, Dkt. 45; Supp. Protective Order, Dkt. 49). Palazio also questions how Plaintiffs could establish for "every class member by clear and convincing evidence that Benelux fraudulently 'overreported' tips on every Form W-2 or 100 filed over the span of six years." (Resp., Dkt. 59, at

28

24). Plaintiffs reply: "The answer to that is simple—by relying [on] Defendant's corporate representative's testimony, in addition to the other evidence in this case, and the standard procedural contours of a class action lawsuit." (Reply, Dkt. 61, at 10). Ultimately, the Court finds Plaintiffs' reasoning persuasive. The liability phase of Plaintiffs' Section 7434 claim, if not the damages phase,[23] is clearly fit for a class-wide determination, and it would be far superior to requiring approximately 100 class members to pursue their claims individually.

### f. Predominance

Rule 23(b)(3) also requires a court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "requires the court to assess how the matter will be tried on the merits, which 'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010) (quoting *O'Sullivan v. Countrywide Home Loans*, 319 F.3d 732, 738 (5th Cir. 2003)). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012)). The predominance inquiry asks whether common issues are "more prevalent or important than the non-common . . . individual issues." *Id.* (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49). At its core, the predominance requirement "tests whether proposed classes are sufficiently cohesive to

---

[23] *See infra* Section III(C)(2)(f).

warrant adjudication by [class] representation." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

Plaintiffs contend that common questions predominate for their Section 7434 claim because all class members will use the same evidence to prove Palazio's liability. (Mot. Class Cert., Dkt. 56, at 17). They state: "The common evidence Plaintiffs will need to prove up these issues consists of [Palazio's] payroll and tax documents, and of deposition testimony from the corporate representative of [Palazio]." (*Id.*). They concede that individual questions of fact regarding the amount of damages each Plaintiff and putative class member is owed will likely arise should they succeed on the liability portion of their claim, but they assert that the common questions nonetheless predominate. (*Id.* at 17–18).

Palazio disagrees, arguing that "individualized inquiries will swamp common questions." (Resp., Dkt. 59, at 18). It claims, for instance, that every putative class member's credit card receipts would need to be reviewed and that every putative class member would need to be questioned about their tip-out amounts in order to determine whether the amount reported on their information return was "fraudulent" under Section 7434. (*Id.* at 18–19). Palazio further argues, "Since there was not a strictly monitored regime of tipping-out, Plaintiffs' hazy testimony on these topics underscores the difficulty of divining 'correct' figures for every individual who either failed to provide written tip income statements to Benelux and/or failed to keep their own tip records." (*Id.* at 19).

Palazio's argument fails. These individual inquiries are not necessary to determine Palazio's *liability*. As discussed in Section III(A)(1), *supra*, a defendant is liable under Section 7434 if it filed an information return, the return was false as to the amount paid, and the defendant acted willfully and fraudulently, which here is equivalent to knowingly or recklessly. *See Doherty*, 72 F.4th at 326. Palazio's corporate representative has testified that (1) waitstaff were required to tip out coworkers

(e.g., bartenders); (2) Palazio kept no records of such tip-outs; and (3) Palazio's policies for reporting income on 1099 and W-2 forms were the same for all waitstaff, with no known exceptions. (Mealey Dep., Dkt. 66-1, at 9–10; Mealey Dep., Dkt. 56-1, at 24). Defendant Mealey's testimony, Plaintiffs' testimony, and Palazio's payroll records are "class-wide proof," *see Tyson Foods, Inc.*, 577 U.S. at 453, that a jury could use to find Palazio liable on all elements as to Plaintiffs and all putative class members; the *specific* amount of income overreported for each individual class member is not relevant to this liability determination.[24] Indeed, other courts have agreed that the "substance and quantity of evidence necessary to prove the class claims won't vary significantly from one plaintiff to another" in Section 7434 cases. *See Celeski*, No. 5:22-CV-01600-HNJ, 2025 WL 2741829, at *12–13. *See also Rios-Gutierrez*, 344 F.R.D. at 205 (certifying a Section 7434 class action under Rule 23(b)(3)). Thus, common questions would surely predominate at the liability stage.

Because the Court must "seriously consider[] the administration of the trial," the Court must also consider whether damage calculations could be done on a class basis or must be determined on an individual basis. *See Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 318–19 (5th Cir. 2024) ("By failing to adequately analyze and determine whether liability and damages should be bifurcated in certifying the class the district court abused its discretion."). The Supreme Court has explicitly held that individualized damages determinations are not a bar to certification under Rule 23(b)(3). *Tyson Foods, Inc.*, 577 U.S. at 453 (citing 7AA C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1778, pp. 123–124 (3d ed. 2005)). In such cases, "the predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish 'liability on a class-wide

---

[24] Palazio also argues that some putative class members may have kept their own tip records. (Resp., Dkt. 59, at 18–19). Even if certain putative class members kept such records for their own use, however, the evidence in the record demonstrates that they did not share those records with Palazio—meaning Palazio could not have accounted for the tip-out amounts in their information returns. (Mealey Dep., Dkt. 56-1, at 22 (agreeing that was "no record of any waitstaff's tip-out to workers" prior to Palazio changing its policies in 2025)).

basis, with separate hearings to determine—if liability is established—the damages of individual class members.'" *Chavez*, 108 F.4th at 318 (quoting *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014)). Additionally, a "class may be divided into subclasses for adjudication of damages." *Id.* (citing Fed. R. Civ. P. 23(c)(5)).

A defendant found liable under Section 7434 "shall be liable to the plaintiff in an amount equal to the greater of $5000 or the sum of—(1) any actual damages sustained by the plaintiff . . . (2) the costs of the action, and (3) in the court's discretion, reasonable attorneys' fees." 26 U.S.C. § 7434(b). Should Plaintiffs seek only statutory damages, calculating the putative class members' damages will not present individualized questions. *See Celeski*, No. 5:22-CV-01600-HNJ, 2025 WL 2741829, at *15 (noting that the "method of calculating damages will remain the same for each Plaintiff, particularly if Plaintiffs seek the statutory penalty of $5000 per occurrence"). If Plaintiffs go this route, common issues would vastly predominate over individual issues.

To the extent Plaintiffs seek actual damages, however, the method of calculating such damages is unclear. Plaintiffs vaguely argue: "Moreover, the damages provided under Section 7434 are the greater of $5,000 or actual damages, and those calculations will be easily amenable to class treatment." (Mot. Class Cert., Dkt. 56, at 10–11). They do not provide any further explanation for how these calculations could "easily" be done. Plaintiffs point to a court that found the need to scrutinize individual tax forms would not undermine predominance in a Section 7434 case, as a "standardized practice" applied to the defendant's conduct. (*Id.* at 17–18 (citing *Palomar v. SMC Corp. of Am.*, No. 1:19-CV-04693-RLY-MJD, 2021 WL 5364150, at *8 (S.D. Ind. Sept. 27, 2021)).

Palazio responds that "Plaintiffs have no damages model for their own individual claims, let alone a model that could be used to efficiently quantify damages for any of their claims on a classwide basis. Nor have Plaintiffs designated any experts who could supply evidence for a

sampling method." (Resp., Dkt. 59, at 22). Like Palazio, the Court is concerned that Plaintiffs have not provided the Court with any proposed model or formula for determining class-wide damages should they seek actual damages. Moreover, the Court finds that the relevant facts in *Palomar* are highly distinguishable. The "standardized practice" cited to by Plaintiffs in *Palomar* referred to the defendant "deduct[ing] the same amount per pay period." *See Palomar*, No. 1:19-CV-04693-RLY-MJD, 2021 WL 5364150, at *8. Here, Plaintiffs testified that they tipped out bartenders, barbacks, and managers in **varying** amounts—i.e., the amount they tipped out varied depending on the day. For instance, Plaintiff Montes testified that the percentage she tipped out to the managers "was different every night. The recommended amount was 10 percent . . . Sometimes it was more depending on how much help we got from managers. **So it would range each shift**."[25] (Montes Dep., Dkt. 60-6, at 25) (emphasis added). Nowhere in Plaintiffs' motion or reply do they deal with this added layer of complexity. Considering Plaintiffs do not have records of their tip-outs,[26] it is entirely unclear to the Court how they would attempt to calculate "actual damages," which would require calculating the specific amount their income was overreported and subsequently calculating the amount they were overtaxed. Nor did they designate an expert to testify about a method for calculating damages. Where "plaintiffs offer[] barely a 'preliminary overview of how [these] damages might be calculated,'" they have not met their "burden to show that these kinds of damages are appropriate for class treatment." *See Cruson*, 954 F.3d at 258 (quoting *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296, 299 (5th Cir. 2004)).

---

[25] Plaintiff Horne similarly testified that the "standard" tip-out amount for managers was 10%, "but it did kind of depend on how much you were making that night." (Horne Dep., Dkt. 60-3, at 39).
[26] *See* Montes Dep., Dkt. 60-6, at 39 (testifying that she does not have any records of the amount she tipped out to other personnel at Palazio); Horne Dep., Dkt. 60-3, at 39 (testifying that she did not keep records of how much she tipped out managers and stating that it was "pretty much all done verbally").

In light of the issues discussed above, the Court sees two paths forward: (1) certifying the class and giving class-wide treatment to the issues of liability and damages, should Plaintiffs seek only statutory damages,[27] or (2) certifying the class because "virtually every issue prior to damages is a common issue," *see In re Deepwater Horizon*, 739 F.3d at 816, but severing and trying separately the issue of damages, should Plaintiffs seek the greater of their actual damages or statutory damages. The Court therefore finds that, at this point, the predominance requirement is met. Based on how the case proceeds, the Court may later bifurcate the case into a liability phase (where common proof and common issues will predominate) and a damages phase (where individual evidence would be required to make individual determinations). Should bifurcation be necessary, the Court is also amenable to creating subclasses—one subclass for class members seeking only statutory damages, and one subclass for class members seeking the greater of their actual damages and statutory damages—as this may greatly streamline the damages phase. *See* Fed. R. Civ. P. 23(c)(5) (allowing the Court to divide a class into subclasses "[w]hen appropriate").

### g. Ascertainability

Finally, the Fifth Circuit has mandated that the putative class members must be ascertainable. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012). This requirement is met. The class members are easily ascertainable by reference to objective criteria, as the entire list of putative class members is contained within the list of employees already provided to the Court. (Employee Spreadsheet, Dkt. 56-9). Though the spreadsheet is over-inclusive—i.e., some of the listed individuals are not

---

[27] As the Court noted in Section III(C)(2)(c), *supra*, should Plaintiffs decide to go this route, a class member who wishes to seek actual damages instead may opt out. *See Bertulli*, 242 F.3d at 297–98 (after discussing typicality and adequacy, finding that the district court did not abuse its discretion in certifying a class because "since this is a 23(b)(3) class, dissatisfied class members have the right to opt out of the class").

included in the class definition as modified by the Court[28]—the Court anticipates that it will not be burdensome for the parties to filter out those individuals for whom Palazio did not furnish an information return. Thus, the ascertainability requirement is satisfied.

### 3. Notice

Rule 23(c)(3) prescribes that for "any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Such notice may be made by U.S. mail, electronic means, or any other appropriate means. *Id.* The notice must, in plain language, state:

i. the nature of the action;

ii. the definition of the class certified;

iii. the class claims, issues, or defenses;

iv. that a class member may enter an appearance through an attorney if the member so desires;

v. that the court will exclude from the class any member who requests exclusion;

vi. the time and manner for requesting exclusion; and

vii. the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Rule 23(d) "vests power in the district court to order one of the parties to perform the tasks necessary to send notice" to a class. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978).

Plaintiffs' Motion for Class Certification argues that the "best notice that is practicable under the circumstances" would be serving notice by First-Class Mail, postage prepaid, by SMS/text, and by electronic mail using the members' last known contact information as provided by Defendants.

---

[28] *See* Section III(C)(2)(a) (modifying the class definition to only include current and former waitstaff who were employed by Palazio at any time six years prior to the filing of this lawsuit to the present and for whom Palazio furnished an information return).

(Mot. Class Cert., Dkt. 56, at 20–21). They also state that it would be appropriate to permit at least thirty days from the date of the mailing for each class member to object to class certification or to opt out of the class. (*Id.*). Plaintiffs do not yet propose specific terms for notice, but they do agree to pay to have the notice delivered in the manner approved of by the Court.

The Court will order the parties to confer and submit a joint advisory outlining a proposed plan to provide notice to the class members within **thirty days** of this Order. Plaintiffs shall draft a proposed class notice form, and the parties shall then confer and endeavor to agree on the proposed notice language. To the extent the parties cannot resolve certain disputes about the language in the notice, Defendants must specifically outline their disagreements in the joint advisory and provide an alternative approach, with appropriate legal citations justifying any area of objection. The joint advisory must also include (1) the parties' plan to ascertain the names and contact information for all class members; (2) the total number of class members, if available at the time of filing; (3) the total estimated cost of providing notice to the class; and (4) whether the parties agree on the "time and manner for requesting exclusion."

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, (Dkt. 63), is **GRANTED IN PART**, such that:

- Plaintiffs' motion for summary judgment on their 26 U.S.C. § 7434 claim is **DENIED**;

- Plaintiffs' motion for summary judgment on Palazio's affirmative defense that Plaintiffs' claims under 26 U.S.C. § 7434 are barred because of the statute of limitation is **GRANTED**;

- Plaintiffs' motion for summary judgment on Palazio's affirmative defense that Plaintiffs did not comply with 26 U.S.C. § 7434(d)'s requirement to "provide a copy of the complaint to the Internal Revenue Service" is **GRANTED**;

- Plaintiffs' motion for summary judgment on Defendants' other affirmative defenses is **DENIED**; and

- Plaintiffs' motion for summary judgment on Palazio's status as an "employer" and "enterprise" under the FLSA and Plaintiffs' status as "employees" is **GRANTED**.

**IT IS FURTHER ORDERED** that Palazio's Motion for Partial Summary Judgment of Plaintiffs' 26 U.S.C. § 7434 Claim, (Dkt. 64), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Class Certification, (Dkt. 56), is **GRANTED IN PART**, such that the following class is certified pursuant to Federal Rules of Procedure 23(a), 23(b)(3), and 23(c)(1)(B):

> All current and former waitstaff who were employed by Defendant Palazio at any time six years prior to the filing of this lawsuit to the present, who did not sign a valid class action waiver, and for whom Defendant Palazio furnished an information return.

The class is certified solely for Plaintiffs' claim under 26 U.S.C. § 7434 for fraudulent filing of information returns by Palazio. The Court appoints Plaintiffs Breona Horne and Maggie Montes as class representatives. The Court appoints Kaplan Law Firm, PLLC, as class counsel, finding that they are adequate after considering the factors provided in Rule 23(g). The Court finds that the class representatives and Class Counsel will fairly and adequately represent the interests of the class.

**IT IS FINALLY ORDERED** that, on or before **April 17, 2026**, Plaintiffs and Defendants shall confer and submit a joint advisory outlining a proposed plan to provide notice to the class members, as explained by the Court in Section III(C)(3), *supra*.

**SIGNED** on March 18, 2026.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE